UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DENNIS GLENDENNING, | ) | Case No.: 1:18 CV 2424 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| CLEVELAND ANIMAL PROTECTIVE | ) | |
| LEAGUE, *et al.*, | ) | |
| | ) | |
| Defendants | ) | ORDER |

Currently pending before the court in the above-captioned case are Defendants Patrick DiChiro ("DiChiro"), Dan Kappus ("Kappus"), and City of Seven Hills's ("Seven Hills") (collectively, "Seven Hills Defendants") Motion to Dismiss (ECF No. 58); Defendant J. Jeffrey Holland's ("Holland") Motion to Dismiss (ECF No. 60); and Defendants Cleveland Animal Protective League ("APL") and Joseph Dell'Anno's ("Dell'Anno") (collectively, "APL Defendants") Motion to Dismiss (ECF No. 61). For the following reasons, the court grants Holland's Motion and grants in part and denies in part the Seven Hills and APL Motions. The court hereby dismisses all claims against Holland, DiChiro, Seven Hills, and the APL. The court also dismisses all claims against Kappus and Dell'Anno, except Counts I, III, and XIV to the limited extent they relate to the alleged destruction and theft of Plaintiff's property.

## I. BACKGROUND

On October 2, 2018, APL officer Dell'Anno, Seven Hills police officer Kappus, and various other representatives from the APL and Seven Hills entered Plaintiff's property to execute a search

warrant based on "good cause to believe" multiple animal cruelty statutes were being violated on the premises. (Warrant at PageID #39, ECF No. 1-4.) During the search, the APL agents seized 135 living cats and 22 deceased cats. (Am. Compl. ¶ 19, ECF No. 25.) The agents found most of the deceased cats in Plaintiff's garage, awaiting burial, but six deceased kittens were in a freezer, awaiting cremation. (*Id*. ¶¶ 23, 26.)

On October 11, 2018, the Parma Municipal Court held a hearing (Case No. 18MIS013), as required by Ohio law, to determine whether the APL agents had probable cause to impound Plaintiff's cats. Ohio Rev. Code § 959.132(E)(1). Plaintiff attended the hearing and asked for a public defender because he claimed he could not afford a lawyer. (Am. Compl. ¶ 45; *see also* Hr'g Tr. at PageID #377, ECF No. 26-2.) However, the judge denied Plaintiff's request, explaining that he was not entitled to a public defender "because technically [there was] no criminal charge" filed against him yet. (Hr'g Tr. at PageID #377, ECF No. 26-1.) Pursuant to Ohio Rev. Code § 2931.18, the APL appointed Holland to appear at the hearing and prosecute the potential animal cruelty violations. (*Id.* at PageID #375.) After hearing testimony from Plaintiff and Dell'Anno about the squalid conditions at Plaintiff's residence, the court found that the APL agents had probable cause to impound Plaintiff's cats. (*Id.* at PageID #421; Judgment Entry, ECF No. 3-2.) Based on the number of cats recovered and its finding that $450 per month per cat was "reasonably needed for the care of the animal(s)," the court ordered Plaintiff to pay the APL $58,950 by October 19, 2018. (Judgment Entry, ECF No. 3-2.) Plaintiff later received a notice confirming the result of the hearing, which listed Holland as "Counsel" and DiChiro as "Prosecutor." (Am. Compl. ¶ 64, ECF No. 25.)

Eight days later, on October 19, 2018, Plaintiff filed a Motion for Temporary Restraining Order ("TRO") (ECF No. 3) in this court. On October 23, 2018, the court held a telephonic conference on the record with counsel for the parties. (Order at PageID #101, ECF No. 6.) During

the conference, the parties discussed a range of constitutional and factual issues. (*Id.* at PageID #102.) After weighing the parties' arguments, the court denied Plaintiff's TRO on October 26, 2018, and set a preliminary injunction hearing for November 7, 2018. (Order, ECF No. 6.)

Meanwhile, in state court, Plaintiff appealed the Parma Municipal Court's probable cause determination on November 7, 2018, (Notice of Appeal, ECF No. 24-1), and Seven Hills brought criminal animal cruelty charges against Plaintiff on October 30, 2018 (Case No. 18CRBO4963), (Ex. A, ECF No. 58-1). In light of the criminal charges and Plaintiff's pending appeal, this court stayed the preliminary injunction hearing. (Order, ECF No. 22.) Plaintiff subsequently filed an Amended Complaint (ECF No. 25) on January 19, 2019, after which Defendants renewed their requests to stay the federal proceedings. (ECF Nos. 29, 30.)

The Ohio Court of Appeals for the Eighth District dismissed Plaintiff's appeal on February 6, 2018. The court explained that the probable cause determination "[was] not a final appealable order" because, although it was "an ancillary to underlying criminal action[,] . . . the court's judgment as to the removal of the animals did not determine the action or prevent a judgment in [Plaintiff's] favor" if he ultimately won acquittal. (Journal Entry, ECF No. 33-2 (citing *State v. Beck*, No. 2014-R-0050, 2015 WL 1289392 (Ohio Ct. App. Mar. 23, 2015)).) The Eighth District also emphasized that a provisional remedy was unnecessary because, if Plaintiff ultimately prevailed, Ohio law would offer adequate remedies at the conclusion of an appeal following a final judgment, either through the return of Plaintiff's animals or payment of their "fair market value." (*Id.*)

On April 29, 2019, Plaintiff resolved his criminal charges by pleading no contest to three second-degree animal cruelty misdemeanors. (*See* Ex. A, ECF No. 58-1.) Despite his conviction, Plaintiff filed a renewed appeal on May 15, 2019, again challenging the initial probable cause determination. (*See* Order, ECF No. 45); *see also* Notice of Appeal, *City of Seven Hills v.*

*Glendenning* (Ohio Ct. App. May 29, 2019) (No. CA-19-108582). This court held a status conference with counsel for the parties on May 29, 2019, at which all parties agreed the federal proceedings should be stayed, pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), pending resolution of Plaintiff's ongoing state court appeal. (Order, ECF No. 45.) The court ordered Plaintiff to notify the court when the appeal concluded. (*Id.* at PageID #567.)

The Ohio Court of Appeals for the Eighth District dismissed Plaintiff's second appeal as untimely on May 29, 2019—coincidentally, the same day of this court's status conference. (Journal Entry, ECF No. 58-2.) The Eighth District held that, because the Parma Municipal Court entered its probable cause judgment on October 18, 2018, Plaintiff "should have filed the appeal no later than November 19, 2018." (*Id.*) Although this ruling contradicted the prior decision that the probable cause finding was not a final appealable order, Plaintiff did not raise this issue in state court or otherwise pursue his appeal further. Moreover, Plaintiff *never* appealed his criminal conviction in Case No. 18 CRB 4963—both of his appeals challenged the Parma Municipal Court's probable cause determination in Case No. 18MIS013. Pursuant to Ohio law, Plaintiff had 30 days from the final journal entry to appeal his criminal conviction, and that period has long since expired.

This court did not receive notice of the May 29, 2019, dismissal until November 13, 2019, when Defendants moved the court to lift the stay and order Plaintiff to show cause why his Amended Complaint should not be dismissed. (ECF Nos. 47, 48, 49.) On March 20, 2020, this court lifted the stay and ordered Defendants to file fully briefed Motions to Dismiss by March 30, 2020. (Order, ECF No. 55.) Defendants filed three separate Motions to Dismiss (ECF Nos. 58, 60, 61), which offer various overlapping arguments asserting lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6). These Motions are now fully briefed and ripe for review.

## II.  LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(1)

A defendant can challenge the court's subject-matter jurisdiction with a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). Such motions can raise either a facial or a factual attack. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). Facial attacks challenge the sufficiency of the pleading itself, whereas factual attacks challenge the factual predicate for subject-matter jurisdiction. *Ritchie*, 15 F.3d at 598. When adjudicating a facial attack, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *Id.* By contrast, with a factual attack, the plaintiff's allegations are not entitled to a presumption of truthfulness, and the court exercises "broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings." *Cartwright*, 751 F.3d at 759. Against either type of attack, the plaintiff must establish subject-matter jurisdiction to survive the motion to dismiss. *Id.* at 760. Lack of subject-matter jurisdiction is a non-waivable, fatal defect. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990).

### B.    Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) provides that a court can dismiss a complaint if it fails to state a claim upon which relief can be granted. A Rule 12(b)(6) motion is "a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Craighead v. E.F. Hutton & Co.*, Inc, 899 F.2d 485, 489–90 (6th Cir. 1990). When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in the light most favorable

to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (holding that, on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Although a complaint need not contain detailed factual allegations, the "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all allegations in the complaint are true." *Twombly*, 550 U.S. at 570. In *Ashcroft v. Iqbal*, the Supreme Court further clarified the "plausibility" requirement, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a probability requirement," it does require the plaintiff to show "more than a sheer possibility that a defendant acted unlawfully." *Id.*

### III. LAW AND ANALYSIS

The three groups of Defendants—Holland, the Seven Hills Defendants, and the APL Defendants—filed separate Motions to Dismiss asserting varying arguments under Rules 12(b)(1) and 12(b)(6). Complicating matters further, Plaintiff directs most of his claims against the "Defendants" collectively rather than specifying which specific claims target which specific Defendants—even though certain claims clearly are not relevant or viable against certain Defendants. The Amended Complaint asserts the following fourteen Counts:

    I.      Injunctive relief against all Defendants requiring the return of Plaintiff's cats, the return of allegedly stolen property, payment for the value of property destroyed during the search, and barring enforcement of § 959.132 as unconstitutional.

II.      Declaratory relief against all Defendants declaring that Plaintiff is the owner of the cats and that Defendants violated his constitutional rights when they seized the cats.

III.     42 U.S.C. § 1983 claim against all Defendants for Fourth Amendment violations relating to the allegedly unlawful seizure of cats and alleged theft and destruction of property that occurred during the search.

IV.     42 U.S.C. § 1983 claim against all Defendants asserting that § 959.132 is facially overbroad, in violation of the Fourteenth Amendment.

V.      42 U.S.C. § 1983 claim against all Defendants asserting that § 959.132 is unconstitutional as-applied to Defendant, in violation of the Fourteenth Amendment.

VI.     42 U.S.C. § 1983 claim against all Defendants asserting that they applied § 959.132 to unconstitutionally deprive Plaintiff of property, in violation of the Fourteenth Amendment.

VII.    42 U.S.C. § 1983 claim against all Defendants asserting that they denied Plaintiff's right to counsel at the probable cause hearing, in violation of the Sixth Amendment.

VIII.   42 U.S.C. § 1983 claim against all Defendants asserting that they denied Plaintiff's right to communicate with counsel and access courts at the probable cause hearing, in violation of the First Amendment.

IX.     42 U.S.C. § 1983 claim against all Defendants asserting that they gave insufficient notice and denied Plaintiff's right to counsel at the probable cause hearing, in violation of the Fourteenth Amendment.

X.      42 U.S.C. § 1983 claim against all Defendants asserting that the bond set at the probable cause hearing was excessive, in violation of the Fourteenth Amendment.

XI.     42 U.S.C. § 1983 claim against the Seven Hills and APL Defendants asserting that they refused to accept a formal complaint from Plaintiff or create a police report, in violation of the First Amendment.

XII.    Ohio constitutional claim for deprivation of property against all Defendants relating to the alleged unlawful seizure of a dog named Zeus.

XIII.   *Monell* claim against the Seven Hills and APL Defendants for failure to train and supervise their animal control agents relative to the seizure of Plaintiff's cats.

XIV.    Claim for attorneys' fees pursuant to 42 U.S.C. § 1988.

Defendants respond to Plaintiff's grab-bag of rambling, repetitive claims in different ways.

The Seven Hills Motion, for example, analyzes Plaintiff's Amended Complaint count-by-count,

directing specific arguments against each claim. By contrast, the APL Motion and Holland Motion take a more generalized approach, asserting blanket arguments against the Amended Complaint as a whole. Due to the nature of the parties' briefing, the court attempts to group Plaintiff's Counts and Defendants' arguments as logically as possible by subject matter and then address each group in turn.

**A.    Immunity**

As an initial matter, the court notes that Holland and DiChiro are entitled to absolute prosecutorial immunity. Prosecutors are immune from liability for damages in § 1983 suits for actions taken within the scope of their prosecutorial duties. *See Imbler v. Pachtman*, 424 U.S. 409, 420 (1976). The Supreme Court and Sixth Circuit have held that immunity extends to prosecutorial actions associated with probable cause hearings because those proceedings are intimately associated with the judicial phase of the criminal process. *Burns v. Reed*, 500 U.S. 478, 487–92 (1991) (holding that prosecutor's participation in probable cause hearing was protected by absolute immunity); *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003) ("[A]bsolute immunity is appropriate for claims based on the prosecutor's appearance at a probable cause hearing and before a grand jury."). Looking to the Amended Complaint, Plaintiff acknowledges that Holland is an attorney "hired by the Cleveland APL," and DiChiro "is a prosecutor for Defendant City of Seven Hills." (Am. Compl. ¶¶ 9–10, ECF No. 25.) And although Plaintiff asserts that he is suing Holland and DiChiro "in both an individual and official capacity," the Amended Complaint is devoid of allegations that go beyond their roles as duly appointed prosecutors.[1] (*Id.*) Because the record and Plaintiff's allegations

---

[1]    Plaintiff's claims against the prosecutors amount to nothing more than a fishing expedition. Indeed, in his Response to the Seven Hills Motion, Plaintiff acknowledges that his claims against DiChiro are not rooted in personal knowledge or reasonable belief but instead on Plaintiff's "presum[ption] that [DiChiro] was involved in some form or manner," which Plaintiff hopes to substantiate through the discovery process. (Pl.'s Resp. to Seven Hills at PageID #680, ECF No. 65.)

establish that any actions Holland and DiChiro took in this case related to their roles as officials prosecuting Plaintiff for animal cruelty in Parma Municipal Court, they are entitled to absolute immunity from Plaintiff's § 1983 damages claims.

**B.     Probable Cause Determination and Seizure of Cats**

The main thrust of Plaintiff's Amended Complaint challenges the Parma Municipal Court's probable cause determination and the APL's alleged unlawful seizure and impoundment of Plaintiff's cats. These issues predominate throughout Counts I, II, III, IV, V, VI, and X. Defendants' Motions offer several bases for dismissal of these Counts, including the *Rooker-Feldman* doctrine, *Heck v. Humphrey*, 512 U.S. 477 (1994), and principles of claim and issue preclusion. The court addresses each in turn.

1.  *Rooker-Feldman* Doctrine

First, to the extent Plaintiff challenges the validity of the state court judgment, this court lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine. This doctrine precludes lower federal courts from hearing actions that in substance seek appellate review of state court judgments, even if the plaintiff claims that the state court judgment violates federal rights, "because 28 U.S.C. § 1257 vests sole jurisdiction to review such claims in the Supreme Court." *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020) (quoting *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012)). In other words, to challenge a state court decision, litigants must proceed through the state appellate system and then to the Supreme Court of the United States. *See United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995). However, *Rooker-Feldman* is a limited doctrine that "applies only to the 'narrow' set of 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *VanderKodde*, 951 F.3d at 402

(quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). To determine whether the doctrine applies, courts must identify the "source of the injury the plaintiff alleges in the federal complaint." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). If the source of the injury is the state-court judgment itself, *Rooker-Feldman* applies. *See id.* But if the injury flows from a different source, then the plaintiff's complaint asserts an independent claim. *See id.* at 393–94. The Sixth Circuit has explained that courts cannot determine the source of the injury "without reference to [the plaintiff's] request for relief." *Berry*, 688 F.3d at 299 (quotation omitted) (alteration in original). Therefore, the *Rooker-Feldman* analysis requires close examination of both the claim and the remedies sought. *Id.* at 298.

At their core, Counts I, II, III, IV, V, VI, and X challenge the Parma Municipal Court's probable cause determination. These claims present a multitude of legal theories, but in one form or another each asserts that the state court was wrong and asks this court to reverse the state court's decision, find that the APL agents lacked probable cause, and correct the alleged error by requiring Defendants to return Plaintiff's cats and enjoining enforcement of § 959.132. Simply put, reviewing these claims and granting the relief Plaintiff seeks would require the court to conduct a prohibited appellate review of the Parma Municipal Court's judgment, which is barred by *Rooker-Feldman*.[2]

2.  *Heck v. Humphrey*

Second, to the extent Plaintiff seeks to invalidate § 959.132 or otherwise challenge his conviction or sentence, his claims fail under the rule in *Heck v. Humphrey*, where the Supreme Court

---

[2]     To the extent Counts V and VI can be interpreted as raising general challenges to the constitutionality of § 959.132 separate and apart from the underlying state court judgment against Plaintiff, *see Lawrence v. Welch*, 531 F.3d 364, 372 (6th Cir. 2008) (holding that claims can fall "outside the scope of *Rooker-Feldman* by virtue of being a 'general challenge' to the constitutionality of a state law or rule"), these claims nonetheless fail under *Heck v. Humphrey* or preclusion doctrine.

-10-

held that a § 1983 claim is barred if its success "would necessarily imply the invalidity of [the] conviction or sentence." 512 U.S. at 487. Plaintiff was convicted in Parma Municipal Court of three counts of companion animal cruelty, in violation of § 959.131. Although Plaintiff had ample opportunity to challenge his conviction and sentence through the state appellate courts, he failed to do so. After abandoning the appeals process, Plaintiff cannot now claim error or try to undue the state criminal proceedings by challenging the constitutionality of § 959.132 in federal court. *See Avery v. Perrysburg Mun. Court Prosecutor*, No. 3:05-CV-7246, 2005 WL 1593676, at *2 (N.D. Ohio July 6, 2005) ("An individual convicted of a crime may not raise claims under 42 U.S.C. § 1983 if a judgment on the merits of those claims would affect the validity of his conviction or sentence, unless the conviction or sentence has been set aside."). Plaintiff maintains that he "is not challenging his conviction either directly or indirectly." (Pl.'s Resp. to Seven Hills at PageID #677, ECF No. 65.) But a finding that the underlying search and seizure were unlawful necessarily undermines the validity of Plaintiff's conviction. (Seven Hills Reply at PageID #684, ECF No. 66.) Further, the sentencing court imposed restitution pursuant to § 959.132(F). So if this court found § 959.132 unconstitutional, "portions of Plaintiff's sentence would be invalidated as well," triggering *Heck*'s preclusive effect. (*Id.* at PageID #684–85.) Because a ruling for Plaintiff would undermine the validity of his conviction and sentence, and because no Ohio court or federal habeas corpus decision has set aside his conviction, Plaintiff cannot proceed on Counts I, II, III, IV, V, or VI to the extent they seek to invalidate § 959.132 or challenge the underlying search and seizure.[3]

---

[3]     Plaintiff asserts that *Wooley v. Maynard*, 430 U.S. 705 (1977), saves him. (Pl.'s Resp. to APL at PageID #665, ECF No. 63 (arguing "a plaintiff can seek prospective relief in federal court despite being previously convicted in state court").) But as the APL Reply aptly explains, *Wooley*'s prospective relief exception does not apply because Plaintiff's claims relative to the seizure of his cats are entirely backward looking. (APL Reply at PageID #693–94, ECF No. 67 (noting that Plaintiff does not face a "constant threat of repeated prosecution under R.C. 959.131").)

3.  Issue and Claim Preclusion

Finally, to the extent Plaintiff's claims regarding the alleged unlawful seizure fall outside

both the *Rooker-Feldman* doctrine and *Heck*, they nonetheless fail under principles of collateral

estoppel, or issue preclusion. Under Ohio law, "collateral estoppel applies 'when the fact or issue

(1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a

court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted

was a party in privity with a party to the prior action.'" *Daubenmire v. City of Columbus*, 507 F.3d

383, 389 (6th Cir. 2007) (quoting *Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994)). Further,

"[w]here collateral estoppel is invoked defensively, only the party against whom issue preclusion

is applied must have been a party to the underlying action." *Scherer v. JP Morgan Chase & Co.*, 508

F. App'x 429, 435 (6th Cir. 2012) (citing *McCrory v. Children's Hosp.*, 501 N.E.2d 1238, 1244

(Ohio 1986)). Here, after the Parma Municipal Court's judgment finding probable cause, Plaintiff's

no-contest plea, and his subsequent conviction for animal cruelty, Plaintiff is barred from attempting

to relitigate the issue of probable cause or the contested search and seizure.

Likewise, Plaintiff's challenges to § 959.132 are barred by the doctrine of claim preclusion,

at least against Seven Hills. Under Ohio law, claim preclusion requires "(1) a prior final, valid

decision on the merits by a court of competent jurisdiction; (2) a second action involving the same

parties, or their privies, as the first; (3) a second action raising claims that were or could have been

litigated in the first action; and (4) a second action arising out of the transaction or occurrence that

was the subject matter of the previous action." *U.S. ex rel. Sheldon v. Kettering Health Network*, 816

F.3d 399, 415 (6th Cir. 2016). By challenging the probable cause determination, the reasonableness

of the search and seizure, and the constitutionality of § 959.132, Plaintiff attempts to relitigate claims

that arise out of the transaction that was the subject matter of the state criminal proceedings brought

by Seven Hills. Plaintiff had a full and fair opportunity to raise these issues in the Parma Municipal Court and through the state appeals process. *See Caroline's Kids Pet Rescue v. Lake Humane Soc'y*, No. 1:17-CV-297, 2017 WL 3976209, at *5 (N.D. Ohio Sept. 11, 2017) (finding that Ohio courts provide an adequate forum to challenge state animal control laws). Because Plaintiff did not avail himself of that opportunity, his claims are now barred. *See Grava v. Parkman Twp.*, 653 N.E.2d 226, 230 (Ohio 1995) (applying claim preclusion where litigant "had a full and fair opportunity to present his case" in prior proceedings and "failed to avail himself of all available grounds for relief"); *Hill v. City of Cincinnati*, No. 1:09-CV-800, 2010 WL 3257725, at *7 (S.D. Ohio July 16, 2010) (applying claim preclusion to § 1983 claim challenging constitutionality of statute of conviction), *report and recommendation adopted*, 2010 WL 3257727 (S.D. Ohio Aug. 17, 2010).

**C.    Notice and Right to Counsel**

Plaintiff also raises various claims (Counts VII, VIII, and IX) relative to the Parma Municipal Court's refusal to provide counsel to represent him during the probable cause hearing. But it is clear that none of the Defendants in this case can be liable for the Parma Municipal Court's decision. The only Defendants involved in the probable cause hearing were Holland, Dell'Anno, and potentially DiChiro. But Holland and DiChiro, as prosecutors, and Dell'Anno, as a witness, did not control the Parma Municipal Judge's decision.[4] As for the other Defendants, Plaintiff's allegations give no basis to hold them responsible, either. Because Plaintiff does not allege any actions for which the Defendants in this case can be liable, the court finds that he fails to state a plausible claim. Moreover, Plaintiff could have appealed the denial of counsel through the state courts, but he chose not to. That failure, plus the fact that these claims implicate the validity of the probable cause determination and

---

[4]        Moreover, in any event, Holland and DiChiro are entitled to prosecutorial immunity and therefore cannot be liable for damages stemming from Plaintiff's § 1983 claims.

Plaintiff's eventual criminal conviction, provide additional, independent reasons that foreclose Plaintiff's arguments. Consequently, Counts VII, VIII, and IX are dismissed.

**D.     Right to File Police Report**

Next, in Count XI, Plaintiff alleges that the Seven Hills and APL Defendants violated his First Amendment right to petition when they refused to make a police report pertaining to "property having been destroyed and stolen" by the APL and Seven Hills Defendants. (Am. Compl. ¶¶ 246–53, ECF No. 25.) This claim arises from Plaintiff's assertion that, during the search of his home, Seven Hills, the APL, Kappus, and Dell'Anno "damaged property having a total value of more than $30,000.00" and stole "coins worth more than $16,800.00." (*Id.* ¶¶ 33–34.) While the court must take these factual allegations as true, Count XI still fails because Plaintiff has not stated a cognizable First Amendment claim. Courts have long recognized that "[n]othing in the First Amendment or in [the Supreme Court's] case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond." *Minnesota State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 285 (1984). In other words, the First Amendment guarantees the right to express one's views, but it does not require the government to reciprocate. Accordingly, federal courts have reasoned that there is no constitutional right to a formal police report. *See Kent v. Gantt*, No. 2:13-CV-459, 2013 WL 5424710, at *5 (S.D. Ohio Sept. 26, 2013) ("There simply is no federal constitutional duty imposed on law enforcement agencies to record every citizen's complaint in writing because there is no corresponding First Amendment right granted to citizens to have their complaints entered into the official written record of a police department."); *Abella v. Simon*, 831 F. Supp. 2d 1316, 1341–42 (S.D. Fla. 2011) ("If it is not a constitutional violation to file a false police report, it cannot be a constitutional violation to file no police report."), *vacated in part on other grounds*, 482 F. App'x 522 (11th Cir. 2012); *see also Jarrett v. Twp. of Bensalem*, 312 F.

-14-

App'x 505, 507 (3d Cir.2009) (filing an inaccurate police report does not violate the First Amendment); *Landrigan v. City of Warwick*, 628 F.2d 736, 745 (1st Cir.1980) (same). Because there is no federal constitutional right to a police report, Plaintiff's claim fails as a matter of law.[5]

### E.    Damaged and Stolen Property

Counts I and III also refer to the property damage and coin theft that Seven Hills, the APL, Kappus, and Dell'Anno allegedly carried out. Specifically, Count I asks the court to order the Defendants to "return all property stolen" and "[p]ay him for the value of his property destroyed," and Count III asserts that the damage and theft violated the Fourth Amendment. (Am. Compl. ¶¶ 86, 104, 123, ECF No. 25.) Plaintiff raises these allegations as part of a single, overarching Fourth Amendment challenge that encompasses the seizure of Plaintiff's cats. Because the various aspects of Plaintiff's unlawful search and seizure claim are so intertwined, and because Plaintiff failed to raise them during the state criminal proceedings, the Seven Hills and APL Motions urge the court to dismiss the claim in toto. (Seven Hills Mot. at PageID #614, ECF No. 58; APL Mot. at PageID #650–52, ECF No. 61; *see also* APL Reply at PageID #695, ECF No. 67 ("Glendenning absolutely had the duty to raise this issue during his criminal proceedings because, if authorities exceeded the scope of the warrant, then that would have resulted in suppression of all evidence against him."). But Plaintiff maintains he had no occasion to challenge the damaged and stolen property during the criminal proceedings. (Pl.'s Resp. to APL at PageID #663–64, ECF No. 63.) He also points out that "the criminal court would have had no authority, in a criminal case, to order Defendants to pay damages and inquire as to the stolen and damaged property." (*Id.* at PageID #664.)

---

[5]    Even assuming a First Amendment violation, the right Plaintiff articulates was not clearly established because a reasonable officer would not have known that refusing to create a police report would violate Plaintiff's constitutional rights. Accordingly, Kappus or any other police officers involved would be entitled to qualified immunity. *See Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).

Plaintiff's argument is well-taken to the extent he seeks to bring an independent Fourth Amendment claim that is wholly separate from any challenge to the validity of the underlying warrant and seizure of his cats. Federal courts have recognized that § 1983 provides a vehicle to assert Fourth Amendment violations based on destroyed or stolen property in certain circumstances. *See Newsome v. Erwin*, 137 F. Supp. 2d 934, 940–43 (S.D. Ohio 2000) (discussing and collecting cases). When the claim arises in the shadow of a criminal conviction, however, the claim must be framed narrowly "in the context of damages caused by confiscation of property and destruction of property caused during the officers' search." *Perry v. Wellington*, No. 98-4215, 1999 WL 1045170, at *1 (6th Cir. Nov. 9, 1999). Any broader framing—*e.g.* harm premised on a warrant issue or harm flowing from evidence obtained during the search—would "imply the invalidity of [the] conviction," triggering *Heck*'s bar. *Id.* So while Plaintiff cannot pursue a Fourth Amendment claim challenging the probable cause determination, the underlying warrant, or the seizure of his cats, his Fourth Amendment claim survives to the extent it separately targets the alleged property damage and coin theft. Of course, Seven Hills and the APL are incapable of stealing or destroying property, so the court dismisses the claim against these Defendants. Consequently, Plaintiff can pursue this claim only against Kappus and Dell'Anno, who are the only natural persons Plaintiff identifies in the Amended Complaint as being involved with the search.[6]

---

[6]     Although Plaintiff has stated a viable § 1983 claim, he must substantiate the alleged property destruction and coin theft with proof in order to recover. It is well-established that "'the manner in which a warrant is executed'—including the damage of property—'is subject to later judicial review as to its reasonableness.'" *United States v. Whisnant*, 391 F. App'x 426, 429–30 (6th Cir. 2010) (quoting *Dalia v. United States*, 441 U.S. 238, 258 (1979)). In other words, Plaintiff cannot recover merely by showing that his property was damaged during the search. Rather, Plaintiff must show that the destruction was unreasonable, going beyond what was necessary for the agents to execute the warrant and secure Plaintiff's cats. *Dalia*, 441 U.S. at 258 n.20 (emphasizing "[t]here is no indication that [the officers'] intrusion went beyond what was necessary").

Because this narrow claim remains against Kappus and Dell'Anno, it would be premature to dismiss Plaintiff's associated claim for attorneys' fees under 42 U.S.C. § 1988 (Count XIV).

**F.    *Monell* Claim**

Plaintiff also brings a *Monell* claim (Count XIII) based on the alleged Fourth and Fourteenth Amendment violations arising from the seizure of his cats.[7] This claim asserts that Seven Hills and the APL maintained a policy or custom of indifference to constitutional rights and that they failed to provide adequate training and supervision to animal control agents. (Am. Compl. ¶¶ 260, 262–72, ECF No. 25.) But this claim fails because, as discussed in detail above, Plaintiff cannot establish a violation of the Fourth or Fourteenth Amendment relative to the probable cause determination or the seizure of his cats. Because a *Monell* claim is not viable without an underlying constitutional violation, the court dismisses Count XIII. See *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) ("There can be no liability under *Monell* without an underlying constitutional violation.").

**G.    Ohio Constitutional Claim**

Finally, Plaintiff seeks relief under Article I, Section 16, of the Ohio Constitution (Count XII), which states:

> All courts shall be open and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay. Suits may be brought against the state, in such courts and in such manner, as may be provided by law.

Plaintiff alleges that Defendants violated this provision when they seized and impounded his dog,

---

[7]    The court construes Plaintiff's *Monell* challenge narrowly because the Amended Complaint does not refer, directly or indirectly, to a policy or custom relative to alleged theft or property damage. The bulk of the claim refers vaguely to generic deprivations of Plaintiff's constitutional rights. In the few instances the claim references specific harms or wrongdoing, it relates to Plaintiff's "property interest in [his] animals" or Defendants' "legal duty . . . to intervene and prevent the illegal seizure, and return the cats to [Plaintiff]." (Am. Compl. ¶¶ 273, 278, ECF No. 25.)

Zeus. This reference to Zeus is puzzling because the Amended Complaint does not otherwise mention a dog being involved, and the APL asserts it "is unaware of any dogs being seized from Glendenning." (APL Mot. at PageID #646 n.1, ECF No. 61.) It appears, then, that this is a drafting error by Plaintiff. But whether a mistake or not, Count XII fails as a matter of law because Ohio courts repeatedly have held that Article I, Section 16, is not self-executing, *Estate of Tokes v. Dep't of Rehab. & Corr.*, 135 N.E.3d 1200, 1207 (Ohio Ct. App. 2019), and Ohio law does not otherwise authorize private suits for violations of the Ohio Constitution, *Moore v. City of Cleveland*, 388 F. Supp.3d 908, 919 (N.D. Ohio May 21, 2019).

## IV. CONCLUSION

For the foregoing reasons, the court grants Holland's Motion (ECF No. 60) and grants in part and denies in part the Seven Hills Motion (ECF No. 58) and the APL Motion (ECF No. 61). The court hereby dismisses all claims against Holland, DiChiro, Seven Hills, and the APL. The court also dismisses all claims against Kappus and Dell'Anno, except Counts I, III, and XIV to the limited extent they relate to the alleged destruction and theft of Plaintiff's property.

To the extent the parties have any need for discovery, it shall be completed expeditiously and by no later than February 16, 2021. The court will hold a telephonic status conference with the parties on that date at 2:00 p.m. The court shall furnish separate email with instructions. Dispositive motions, if any, are due by March 15, 2021. If the case is not resolved by motion, trial shall commence on July 12, 2021, at 9:00 a.m., in Courtroom 17A. A separate trial order shall issue.

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

January 4, 2021

-18-